NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued July 7, 2020
Decided July 23, 2020

**Before**

DIANE S. SYKES, *Chief Judge*

FRANK H. EASTERBROOK, *Circuit Judge*

MICHAEL S. KANNE, *Circuit Judge*

No. 19-2665

| | |
|---|---|
| LINDA ROBERTSON, | Appeal from the United States District |
| *Plaintiff-Appellant,* | Court for the Central District of Illinois. |
| | |
| *v.* | No. 4:18-cv-04204-SLD-JEH |
| | |
| RYAN D. McCARTHY, | Sara Darrow, |
| Secretary of the Army, | *Chief Judge.* |
| *Defendant-Appellee.* | |

**O R D E R**

Linda Robertson, a black civilian employee for the United States Army, believes she was denied a promotion in retaliation for having previously filed a complaint about her supervisor. She also claims that she was subjected to retaliation and discrimination when she received a three-day suspension for not completing a task assigned by that same supervisor. The district court entered summary judgment for the defendant, concluding that there was insufficient evidence of an unlawful motive. We affirm the judgment.

The Army hired Robertson in 2014 to be a victim advocate for the Sexual Harassment/Assault Prevention and Response Program ("SHARP"). She was the only

SHARP victim advocate at the base. Her duties included supporting sexual-assault victims, coordinating support services, and maintaining SHARP training standards.

In the fall of 2015, Terese Seibert, Robertson's supervisor, gave Robertson an annual performance review. On a scale of 1 to 5 (5 being the best), Robertson scored a 3—meaning that she was successful or excellent in meeting her objectives. Seibert explained that Robertson did not receive a higher rating because she had missed more than two deadlines, failed to brief Seibert about her completed SHARP tasks, and failed to conduct ongoing program assessments to identify shortfalls. Robertson had received the same overall performance rating the prior year.

Upset by the score, Robertson lodged a complaint with the Army's equal employment office challenging Seibert's rating, which she believed stemmed from discrimination based on race. Seibert was informed of Robertson's complaint a few days later.

In the meantime the Sexual Harassment Assault Response Coordinator at the Army base was scheduled to go on military leave, and Seibert and Robertson expected that the position would be filled on a temporary basis (120 days). Robertson wanted to know if she might qualify for the position, so she submitted her résumé to Seibert to forward to the personnel center for guidance. Per Robertson's résumé, the personnel center determined that she was not qualified for the position and recommended that she revise the résumé to more clearly explain her skills and responsibilities. As it turned out, no opening for the position was posted, and the position was not filled, even temporarily.

In March 2016 Seibert assigned Robertson the task of preparing SHARP training materials. Robertson contacted SHARP's out-of-state academy and requested templates to help her prepare the materials. The academy told Robertson that she was not responsible for creating training materials and should not complete the task. Robertson emailed that reply to Seibert. The SHARP program manager also emailed Seibert, reiterating that Robertson was not responsible for producing training materials. Seibert responded both to Robertson and to SHARP's academy that Robertson was responsible for creating training packages for the fire and police departments and that this task would help her build necessary skills for professional development. Robertson, however, continued to balk, maintaining that the assignment was outside her job duties. Seibert then recommended, and Robertson received, a three-day suspension for refusing to comply with orders.

After exhausting her administrative remedies, Robertson filed this suit in federal court, arguing that the Army discriminated against her because of her race in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–2.[1] Specifically, she asserted that the Army retaliated against her when it did not promote her to fill the sexual-harassment coordinator's vacancy. She also argued that the Army's decision to suspend her for three days was discriminatory and in retaliation for the complaint she had filed against Seibert concerning her performance review.

The district court entered summary judgment for the Secretary of the Army. Regarding Robertson's claim of racial discrimination, the judge concluded that no reasonable fact-finder could conclude that her race contributed to her three-day suspension. The judge further determined that she had not raised a triable issue over whether retaliation (for filing the prior complaint against Seibert) played any role in either her suspension or nonpromotion.

Robertson first argues that the judge erred by overlooking evidence of retaliation concerning her claim that she was wrongly denied a promotion. She relies on her assertions that Seibert effectively sabotaged her chances at a promotion by never forwarding her résumé to the personnel center for consideration. She also contends that Seibert once told her that she would never be promoted to the coordinator position because she did not have confidence in herself.

As the Secretary correctly points out, however, Robertson's argument is doomed because she cannot show that she suffered a materially adverse employment action. A plaintiff cannot show retaliation if she never actually applied for the promotion that she did not receive. *See Poullard v. McDonald*, 829 F.3d 844, 858 (7th Cir. 2016). Here, the coordinator position Robertson sought was never posted, and she never applied for it. Further, a retaliation claim requires proof of but-for causation. *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 352 (2013); *Mollet v. City of Greenfield*, 926 F.3d 894, 896–97 (7th Cir. 2019). Robertson has not introduced evidence to suggest that any action of Seibert's caused her not to be promoted.

In any event, nothing in the record would permit a fact-finder to conclude that Seibert harbored any retaliatory motive or prevented Robertson from being promoted.

---

[1] Robertson also brought a claim for age discrimination under the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 626(e), but she did not raise any argument relating to that claim at summary judgment and has not pursued the claim on appeal.

*See Abrego v. Wilkie*, 907 F.3d 1004, 1014 (7th Cir. 2018). Contrary to Robertson's contentions, the Secretary put forth undisputed evidence that Seibert *did* forward Robertson's résumé to the personnel center, and Robertson was advised to revise her résumé to more adequately set forth her qualifications.

Robertson also maintains that causation can be inferred from the timing of her complaint against Seibert—coming as it did just a few weeks before she sought the promotion. She contends that because Seibert learned of her complaint a short time before she applied for the position, Seibert retaliated against her by obstructing her attempt to file an application. But timing alone is insufficient to support a retaliation claim. *See Mollet*, 926 F.3d at 898. And as already mentioned, Robertson cannot point to anything to support but-for causation. Her evidence of suspicious timing is by itself insufficient for a fact-finder to conclude that Seibert retaliated against her.

As for her claim that she was suspended in retaliation for her prior complaint, Robertson asserts that the district court gave too little weight to her evidence of Seibert's continued "harassment"—typified by Seibert's order to develop training materials. But making out a retaliation claim required Robertson to show that a causal link connected her protected activity with an adverse employment action. *See Lewis v. Wilkie*, 909 F.3d 858, 866 (7th Cir. 2018). Suspicious timing alone, as we have already mentioned, is not enough to prove retaliation, *see Mollet*, 926 F.3d at 898, and Robertson cannot identify anything in the record to dispute the veracity of Seibert's explanation that Robertson was suspended because she refused to follow the orders of a superior, *see Liu v. Cook Cty.*, 817 F.3d 307, 316 (7th Cir. 2016).

Relatedly, Robertson argues that the district court gave too little weight to her evidence showing that her suspension resulted from discrimination. She seems to suggest that discrimination can be inferred from the expectation that she should follow Seibert's order to create training materials—an order she deems illegitimate because it was contrary to the directive of SHARP's academy. But to survive summary judgment, Robertson had to present sufficient evidence that race caused an adverse employment action, *see Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016), and she presented no evidence that her suspension had anything to do with her race.

AFFIRMED